■ In the Matter of JANNIE JONES, Petitioner, v NEW YORK CITY HOUSING AUTHORITY, Respondent.—Determination of respondent New York City Housing Authority, dated August 11, 1976, terminating petitioner's tenancy on the ground of breach of rules and regulations and undesirability, confirmed, without costs and without disbursements. Basically, the charge against petitioner was that, in violation of the rules, she had, without the housing manager's consent theretofore obtained, permitted a certain named male to take up residence in the apartment where she resided with her children, and that her friend had physically and verbally abused authority employees and tenants on eight different occasions. There was substantial evidence as to both charges by tenants as well as employees. It was conceded that the friend possessed keys to petitioner's apartment. At the hearing, there were produced a lease on an apartment elsewhere in the male friend's name and rent receipts issued to him. Based upon this evidence, petitioner claims the benefit of a portion of respondent's regulations to the effect that lease and receipt evidence concerning a claimed interloper's other apartment proves that the latter did not reside in the authority's premises. The same regulation states that such evidence is "rebuttable proof", and it was rebutted by the six witnesses who testified against petitioner. Their credibility and the weight given their testimony were for the hearing officer to determine. In the circumstances, there is no basis for us to upset the conclusion that petitioner had violated the terms of tenancy. As to the argument that the penalty of termination is excessive, termination is the only way to assure that the disruptive friend will stay out of the premises. Concur—Lupiano, J. P., Lane and Markewich, JJ.; Evans, J., dissents in the following memorandum: The petitioner is a tenant in a housing project owned and operated by the New York City Housing Authority. Divorced, she resides there with her two infant children. Respondent brought a termination of tenancy proceeding charging that a friend of hers was residing in the apartment without permission in violation of the rules and regulations, and that he physically or verbally abused and harassed tenants and employees. The hearing officer found that the friend resided there based upon the testimony of six witnesses, four of whom were

residents of the same building and were members of the tenant patrol, and two employees, one of whom worked daily in the petitioner's building. It is conceded that the friend had a key to the lobby and to petitioner's apartment. One neighbor testified that he saw the friend come and go, using a key on every day during that month. He also states that he saw the friend at 6:30 one morning. Another tenant said that he too had seen the friend use keys for access to the apartment and the lobby. Another witness saw the friend come and go two or three times a week, while another said he saw him around every day. An employee testified that he too had seen the friend use a key to enter the lobby and the apartment, this was corroborated by his supervisor who added that he saw the friend's car every day. The friend testified that he did not live at the apartment, and had none of his possessions there, as he had his own apartment. He testified that he had a key, in case of emergency, as petitioner is an asthmatic. He also took care of her children. Petitioner testified that the friend did not reside or keep his belongings in her apartment. She also stated that she went to his apartment nearly every week-end and that it was furnished and there was food in the refrigerator. She also produced two leases from other premises, both signed by her friend and in conjunction therewith six rent receipts for the then current year. In addition, affidavits by the office manager, porter and superintendent of the friend's apartment house attest to his residing at a place other than petitioner's premises. Without addressing myself to the question of credibility, I note that the hearing officer found that all six of the authority's witnesses had "at one time or another they came into conflict with Mr. Mobley". We must be mindful then, that this might provide the motivation for spurious testimony, especially in light of the documentation provided by petitioner. These are hardly disinterested witnesses. The possession and use of a key and frequent visits to petitioner's apartment are insufficient to establish residency. Mr. Mobley gave his reasons for such possession, and it is not unusual in this city for a single woman, living alone with her children, to establish such a symbiotic relationship with a friend, male or female. Residence must mean actual habitation; not a mere coming and going, no matter how unusual the hours may have been. Daily visits by a friend or relative with keys would not constitute a residency. No evidence was produced that he stayed there, or had any of his possessions there. The only testimony adduced was testimony that he was seen coming and going. This is too insubstantial to support a finding of residency. In addition, the authority's termination procedures set forth that if the tenant claims that the alleged offender did not occupy the premises "evidence of his claim, such as a signed lease and/or rent receipts at another premises * * * shall be rebuttable proof by the tenant that such person did not or does not presently occupy the premises." Thus, the burden fell upon the authority to rebut the overwhelming documentation presented by the petitioner, and the insubstantial testimony of interested witnesses is not sufficient to sustain that burden; therefore, the determination of respondent terminating petitioner's tenancy should be annulled and the administrative proceedings terminating the petitioner's tenancy dismissed.